USDC SCAN INDEX SHEET

















GJM    10/17/03    12:01

3:03-CV-02005   GONZALEZ V. THE CITY OF CALEXICO

*1*

*CMP.*

Gregory G. Petersen (SBN 77744)
Cherry-Marie D. Rojas (SBN 141482)
Micah S. Lachtman (SBN 218588)
**CASTLE, PETERSEN & KRAUSE LLP**
**Attorneys at Law**
12791 Western Avenue, Suite J
Garden Grove, California 90071
Telephone: (714) 372-7633
Facsimile: (714) 372-7633

**Attorneys for Plaintiffs**
**Jesus E. Gonzalez and Calexico Police Officers'**
**Association**

FILED

03 OCT -9 PM 2:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICER JESUS E. GONZALEZ, and CALEXICO POLICE OFFICERS' ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CITY OF CALEXICO; CALEXICO POLICE DEPARTMENT; MARIO V. SANCHEZ, CHIEF OF POLICE, individually and in his official capacity; JAMES L. NEUJAHR, LIEUTENANT, individually and in his official capacity; LUIS ESTRADA, CITY MANAGER, individually and in his official capacity; JOHN RENISON, CITY COUNCIL MEMBER, individually and in his official capacity, ALEX PERRONE, CITY COUNCIL MEMBER, individually and in his official capacity; AND DOES 1 THROUGH 10, INCLUSIVE,.<br><br>    Defendants. | Case No. **03 CV 2005 K JFS**<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

ORIGINAL

-1-

## JURISDICTIONAL FACTS

1.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. sections 1331 and 1343(3) which confer Original Jurisdiction on the District Courts of the United States of all civil actions arising under the Constitution or the Laws of the United States and civil actions to redress the deprivation, under color of State Law, of any right, immunity or privilege secured by the Constitution of the United States. Plaintiffs further invoke Supplemental Jurisdiction of this Court to consider claims arising under State Law pursuant to 28 U.S.C. section 1367(a).

2.   The acts, events, or omissions giving rise to the claims set forth herein occurred in the Southern District of California, Defendants named herein reside within the Southern District of California and, venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b).

3.   This is an action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of State or Local Law of rights, privileges and immunities, liberty and property, secured to Plaintiffs by the First and Fourteenth Amendments to the Constitution of the United States, without Due Process of Law and seeking extraordinary relief, and monetary damages incidental thereto, for violations of the Public Safety Officers' Procedural Bill of Rights Act, California Government Code §§ 3300 et seq., and such other statutes and regulations as may apply to the facts.

4.   At all times relevant to this COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, Defendants, and each of them, acted under color of law, including, but not limited to, the ordinances, rules, regulations, customs, usages, and policies of the CITY OF CALEXICO and the CITY OF CALEXICO POLICE DEPARTMENT

5.   At all times relevant to this COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, Defendants, and each of them, separately and in concert, conspired and engaged in the illegal conduct herein described, to the injury of Plaintiffs, and deprived Plaintiffs of rights, privileges, immunities and property

1    secured to them by the First and Fourteenth Amendments to the Constitution of the
2    United States, the Laws of the United States, and the Laws of the State of California.

3                                    **PARTIES**

4        6.    Plaintiff, OFFICER JESUS E. GONZALEZ ("OFFICER GONZALEZ"),
5    is and was at all times relevant hereto a citizen of the United States and of the State
6    of California, and employed as a Peace Officer under the terms and conditions of the
7    California Penal Code section 830.1 and California Government Code section 3300
8    et seq., holding the rank and title of Police Officer with the Calexico Police
9    Department ("CPD").

10       7.    Plaintiff, CALEXICO POLICE OFFICERS' ASSOCIATION ("CPOA"),
11   is and was at all relevant times hereto, a mutual benefit corporation organized and
12   doing business as a sanctioned police union under the laws of the State of California.

13       8.    Defendant, City of Calexico ("CITY"), is a public entity organized,
14   existing, and incorporated under the Laws of the State of California.  The CITY is a
15   "person" under the terms of 42 U.S.C. section 1983, as the injuries or deprivations
16   alleged herein resulted under the long standing custom, policies, or practices of the
17   CITY or were ratified, approved, condoned, or undertaken by policy making officials
18   of the CITY.

19       9.    Defendant, Mario V. Sanchez ("SANCHEZ"), is and was at all times
20   relevant hereto, a supervising, managerial, and policy making official of the CPD,
21   holding the rank and title of Chief of Police.  At all times relevant hereto, Defendant
22   SANCHEZ was acting within the course and scope of his employment with the
23   Department.  Defendant SANCHEZ is sued herein in his individual and official
24   capacities.

25       10.   Defendant, James L. Neujahr ("NEUJAHR"), is and was at all relevant
26   times hereto, a supervising, managerial, and policy making official of the CPD,
27   holding the rank and title of Lieutenant.  At all times relevant hereto, Defendant
28   NEUJAHR was acting within the course and scope of his employment with the

1   Department.  Defendant NEUJAHR is sued herein in his individual and official
2   capacities.

3       11.   Defendant, Luis Estrada ("ESTRADA"), is and was at all relevant times
4   hereto, a supervising, managerial, and policy making official of the CITY, holding the
5   rank and title of City Manager.  At all times relevant hereto, Defendant ESTRADA
6   was acting within the course and scope of his employment with the CITY.  Defendant
7   ESTRADA is sued herein in his individual and official capacities.

8       12.   Defendant, JOHN RENISON ("RENISON"), is and was at all relevant
9   times hereto, a member of the City Council, and is a supervising, managerial, and
10  policy making official of the CITY.  At all times relevant hereto, Defendant RENISON
11  was acting within the course and scope of his service to the CITY.  Defendant
12  RENISON is sued herein in his individual and official capacities.

13      13.   Defendant, ALEX PERRONE ("PERRONE"), is and was at all relevant
14  times hereto, a member of the City Council, and is a supervising, managerial, and
15  policy making official of the CITY.  At all times relevant hereto, Defendant RENISON
16  was acting within the course and scope of his service to the CITY.  Defendant
17  RENISON is sued herein in his individual and official capacities.

18      14.   Despite the fact that Defendants were acting in the course and scope of
19  their employment with, and service to the CITY, the individual Defendants acted with
20  corruption, malice, and ill will.

21      15.   The true names and capacities, whether individual, corporate, associate,
22  or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs,
23  who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed
24  and believe and on such information and belief allege that each of the fictitiously
25  named Defendants sued herein is legally responsible in some manner for the events
26  and happenings referred to herein, and that Plaintiffs' damages as alleged were
27  proximately caused by their conduct.  Plaintiffs will seek leave of this Court to amend
28  this Complaint to assert the true names and capacities when the same have become

-4-

1  known to Plaintiffs.

2  16.   At all times herein mentioned, unless otherwise state, Defendants, and

3  each of them, were the agents and employees of each of the remaining Defendants, and

4  were at all times herein acting within the scope and purpose of said agency and

5  employment, and each Defendant has ratified and approved the acts of their agent.

6  17.   The Defendants, and each of them, are located in or reside in the San

7  Diego County, State of California, and each of the acts alleged herein occurred in the

8  jurisdiction of said County.

9  18.   Plaintiff's are informed and believe that Defendants, have, or shall act,

10  to deprive them of their rights protected by the federal and state constitutions, as well

11  as federal and state statutes and state common law.

12  19.   The above Defendants, and each of them, except Defendant CITY, which

13  is sued as an entity, are sued in their individual and/or official capacities.

14  20.   Unless otherwise indicated, Plaintiffs herein allege that each Defendant

15  herein committed, ordered, directed, supervised, allowed, planned, ratified, concealed,

16  organized, or otherwise participated in the unlawful acts complained of herein.

17  21.   The acts of the above referenced Defendants who are identified as

18  employees and/or officials of the CITY, were in accordance with and represent the

19  official policies of the CITY or are employees whose conduct or acts may be said to

20  represent the official policies of the CITY.

21  **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22  22.   Plaintiffs, and each of them, believe that Defendants, and each of them,

23  breached its contract which authorized CPD Police Officers to purchase, possess, and

24  use Assault Rifle 15s ("AR-15s"). The breach of contract was in retaliation for being

25  members of, and participating in the CPOA and its activities, and for the purpose of

26  creating a hostile, intimidating, and emotionally stressful work environment.

27  23.   On or about March 15, 2002 SANCHEZ authorized approximately fifteen

28  (15) CPD officers to purchase, possess, and use AR-15 rifles. (An authorizations is

-5-

1 || hereto attached as Exhibit 1.) SANCHEZ'S authorization is necessary for the POLICE

2 || OFFICERS to possess and use such weapons.  Each  AR-15 was required to be

3 || registered to the CPD in order to be purchased. (Registration Form hereto Attached

4 || as Exhibit 2).

5 ||      24.    Approximately fifteen (15) CPD Police Officers purchased AR-15 rifles

6 || and additional equipment, such as scopes, per SANCHEZ'S authorization.  The CPD

7 || officers spent approximately fifteen thousand dollars ($15,000) purchasing the rifles,

8 || ammunition, and the requisite safety equipment.  The POLICE OFFICERS purchased

9 || the AR-15s for use while on-duty and for additional protection while in the field.

10 ||      25.    All AR-15s purchased by the CPD POLICE OFFICERS remained in the

11 || personal possession of the officers.

12 ||      26.    An agreement between the CPOA and SANCHEZ was made to the effect

13 || that the  issuance and deployment of AR-15s is in the best interest of the POLICE

14 || OFFICERS and the community.  It was also understood between the CPOA and

15 || SANCHEZ that the CPD would train the POLICE OFFICERS to safely use the AR-

16 || 15s.  The CPD agreed to provide and pay for the AR-15s.

17 ||      27.    While SANCHEZ encouraged and authorized the POLICE OFFICERS

18 || to purchase AR-15s, he subsequently failed to establish a policy concerning the AR-

19 || 15s  use or authorize the POLICE OFFICERS to carry them in their patrol vehicles.

20 || However, the CPD spent considerable amounts of money and resources  purchasing

21 || and installing AR-15 gun racks in CPD patrol vehicles.

22 ||      28.    The CPD had a written policy and a training course for the use of the AR-

23 || 15 rifles that is recognized by the Police Officers Standards and Training ("POST")

24 || and was approved by the governing body of California Law Enforcement Agencies.

25 || This policy was not authorized by SANCHEZ.

26 ||      29.    CPD purchased ten (10) Ruger Mini 14, Centerfire, .223 rifles ("Ruger")

27 || and has not used them or trained any officer for their use.  The Ruger fires the same

28 || .223 round as the AR-15.

30.   After the AR-15s were purchased by the POLICE OFFICERS with their own funds, SANCHEZ refused to and did not arrange or allow any training to be arranged for the POLICE OFFICERS, effectively preventing the POLICE OFFICERS from using the rifles.

31.   Police Officer Fabian Mejia ("OFFICER MEJIA") attended AR-15 training courses and other weapons courses at his own expense and became a certified weapons instructor.   He has subsequently become a range master for the CPD. SANCHEZ has continually refused to allow OFFICER MEJIA to train CPD officers on the use of the AR-15s.

32.   Numerous conferences have been conducted between SANCHEZ and the CPOA regarding the AR-15 rifles and other matters.   On or about March of 2003, OFFICER MICHAEL CHRISTIAN ("OFFICER CHRISTIAN"), Vice President of the CPOA, and SERGEANT GERMAN DURAN ("SERGEANT DURAN") met with SANCHEZ.   SANCHEZ still refused to re-authorize the use of the AR-15s by the POLICE OFFICERS. OFFICER CHRISTIAN AND SERGEANT DURAN stated to SANCHEZ that they were going to contact the City Manager, Luis Estrada ("ESTRADA"), regarding the matter.

33.   CPOA representatives subsequently contacted ESTRADA who stated he would contact SANCHEZ and get back to the CPOA.   Two weeks went by without a response from ESTRADA in which they stated that the CPOA would contact the City Council if they did not hear about the AR-15 issue.   Approximately three weeks later OFFICER HACKETT and SERGEANT DURAN contacted ESTRADA who advised them that SANCHEZ decided not to provide training to the CPD Police Officers. The Police Officers stated to ESTRADA that they thought SANCHEZ made the wrong decision and that they had arranged training through the Torrance Police Department for approximately seven thousand dollars ($7000).   ESTRADA then stated that he could arrange the training for three thousand dollars ($3000), but this was never approved.

34.   THE CPOA subsequently wrote a memorandum to ESTRADA to request that the matter of the AR-15s be put on the Calexico City Council's agenda for the upcoming meeting. The issue was not put on the agenda and neither the CPOA or any of its members were allowed to address the City Council pursuant to ESTRADA'S orders.

35.   Calexico's City Attorney, Michael Rood ("ROOD"), advised the CPOA that they should be reimbursed for the purchase of the AR-15s. SANCHEZ requested a meeting with OFFICER CHRISTIAN after numerous written communications with ESTRADA and ROOD.   The meeting between OFFICER CHRISTIAN and SANCHEZ occurred on or about June 7, 2003. SANCHEZ suggested that OFFICER CHRISTIAN had misrepresented his remarks in one of the CPOA's letters to ESTRADA and that he did not authorize the use of the rifles. OFFICER CHRISTIAN requested that another CPOA member be allowed to participate in the meeting as a witness.   At that point, SANCHEZ responded that he did not want to discuss the matter further.

36.   After being ordered by the City Council to meet with the CPOA regarding the rifles, ESTRADA and SANCHEZ failed to contact any CPOA board member. Instead, SANCHEZ and ESTRADA released a letter ordering the return of the rifles which is a violation of the Memorandum of Understanding Between the CITY and the CPOA and the Brown Act.

37.   On or about September 15, 2003, SANCHEZ issued a letter to the Police Officers who purchased AR-15s with their own money.   The letter stated that it was "illegal for you to retain this weapon for your personal use pursuant to the California Penal Code." (Attached hereto as Exhibit 3).   It was not illegal for the Police Officer to possess the AR-15s because SANCHEZ authorized their use. (See Exhibit 1). The letter of September 15, 2003 was patently disingenuous as SANCHEZ was the official who actually authorized the purchase of the AR-15s in the first place, thus the officers were not acting illegally. SANCHEZ'S statement that the Police Officers were acting

illegally is untrue and defamatory. The CITY spent a significant amount of money on ammunition and training costs for the Police Officers to use the AR-15s. This letter essentially calling the Police Officers criminals was published and circulated to the City Council and various members of the public.

38.   On or about September 24, 2003 the fifteen officers who were authorized by SANCHEZ to purchase AR-15 rifles  handed them in to the CPD.

39.   PERRONE  has made statements which have been published in newspapers in Mexico that the CPOA's police officers are trouble makes and that those responsible for the CPOA organized demonstration of its members involving the turning in of the AR-15 rifles would be punished.

40.   ESTRADA has continuously failed to meet and confer with the CPOA regarding the issue of the AR-15 rifles in violation of the Memorandum of Understanding ("MOU") Between the CITY and the CPOA.

41.   The City Council members, and each of them, have continuously refused and failed to (1) meet and confer; (2) place CPOA requests on the City Council's agenda; (3) give a written reason the CPOA as to why its requests were not placed on the agenda; and (4) comply with the MOU between the CITY and CPOA.

42.   SANCHEZ and NEUJAHR have continuously and repeatedly harassed, intimidated, and retaliated against CPOA and its members in violation of public policy and federal and state law.

43.   CPOA members have been and continue to be denied days-off requests and sick leave, as well as been subject to new policies and procedures because of their union activities, in violation of the MOU and state and federal law.  CPOA members have been ordered to leave work or "punch out" because of their union activities and wearing of CPOA t-shirts.

44.   On or about September 28, 2003, SANCHEZ and NEUJAHR moved the investigation division under the command of NEUJAHR.  This was done to insure that Sergeant Duran, a vocal member and supporter of CPOA, can be monitored by

-9-

1 || NEUJAHR who has, and continues to retaliate and harass Sergeant Duran because of

2 || his union activities.

3 || **FACTS COMMON TO OFFICER ERIC HACKETT AND DEFENDANTS**

4 ||     45.   Officer Eric Hackett ("Officer Hackett") is the President of the CPOA and

5 || has been involved with the aforementioned AR-15 rifle incident and other various

6 || matters.  On or about January of 2003, Officer Hackett tested for the rank of sergean,

7 || which he ranked second.  He  has not as of yet been promoted to sergeant.

8 || SANCHEZ has stated that Officer Hackett would never be promoted to Sergeant.

9 ||     46.   The CPD uses a selection process for shift assignments which are based

10 || on seniority.  Officer Hackett was denied the shift team he requested in contravention

11 || of CPD policy and standard operating procedure.  SANCHEZ grants police officers

12 || with less seniority their requests, while denying the requests of more senior police

13 || officers.

14 ||     47.   On or about June 4, 2003 Sergeant Paco Cuerllar selected a team of

15 || officers to assist a drug enforcement administration investigation which involved

16 || overtime compensation.  Officer Hackett was assigned to this investigation.  When

17 || SANCHEZ became aware that Officer Hackett was assigned to the investigation, he

18 || ordered his removal.  SANCHEZ'S  reason for the removal was that he was awaiting

19 || the outcome of a use of force investigation.  However, this statement is inconsistent

20 || with the fact that  none of Officer Hackett's other assignments have been impacted.

21 || This was done by SANCHEZ to prevent Officer Hackett from earning additional

22 || compensation through overtime in retaliation for and because of his union activities.

23 ||     48.   On or about September 5, 2003, Officer Hackett was dispatched to the

24 || CPD and was  told to contact Sergeant Padilla.  Sergeant Padilla explained that a dog

25 || had been in and around the Calexico Airport for approximately three weeks and was

26 || a safety hazard. He ordered Officer Hackett to kill the dog. Sergeant Padilla's orders

27 || were from NEUJAHR.

28 ||     49.   Sergeant Padilla handed Officer Hackett a CPD Ruger Mini 14 assault

1 | rifle and said "use this Eric." Officer Hackett replied that he would need a magazine
2 | and at least one round of ammunition, which Sergeant Padilla was unable to procure.
3 | Officer Hackett then stated to Sergeant Padilla that he had a AR-15 rifle in his car and
4 | that it was the same round as the Ruger Mini 14 assault rifle. Sergeant Padilla replied
5 | to Officer Hackett "OK, get it."

6 |    50.    Officer Hackett then proceeded to the Calexico Airport pursuant to
7 | Sergeant Padilla's orders to terminate the dog with the AR-15 rifle. Officer Hackett
8 | shot the dog with the AR-15 rifle in compliance with orders.

9 |    51.    Officer Hackett received a letter from Delfino O. Matus, an Internal
10 | Affairs Investigator, dated September 19, 2003. The letter stated that the CPD
11 | Internal Affairs received a complaint regarding Officer Hackett's use of an
12 | "unauthorized" weapon to kill a dog at the Calexico Airport. However, Officer
13 | Hackett was authorized by Sergeant Padilla to use his AR-15 to kill the dog. This
14 | investigation is punitive and is being inflicted on Officer Hackett for the purpose of
15 | harassment, intimidation, retaliation for union activities, and to create emotional
16 | distress.

17 |    52.    Officer Hackett subsequently asked NEUJAHR whether Officer Hackett
18 | was a witness or a subject in the shooting of the dog at Calexico Airport. Sergeant
19 | Duran asked NEUJAHR why Officer Hackett was being questioned about the dog
20 | incident since NEUJAHR ordered it. An argument then ensued in the hallway outside
21 | of the roll call of the morning briefing. NEUJAHR said to Sergeant Duran, "you had
22 | better know your place Sergeant." This made the Police Officers in the area extremely
23 | uncomfortable, and created a hostile environment.

24 | **FACTS COMMON TO OFFICER CHRISTIAN AND DEFENDANTS**

25 |    53.    OFFICER CHRISTIAN has been continuously employed with the CPD
26 | for approximately twelve (12) years and is currently assigned as a Detective Sergeant.
27 | Throughout his career, OFFICER CHRISTIAN has received favorable performance
28 | reviews and commendations.

54.   Approximately one week after the heated meeting regarding the AR-15s between OFFICER CHRISTIAN and SANCHEZ, OFFICER CHRISTIAN was working as a detective under the supervision of Sergeant Duran on June 13, 2003. OFFICER CHRISTIAN was off-duty as of 8:00 p.m. after working approximately three hours of overtime. OFFICER CHRISTIAN went to SERGEANT DURAN'S home where they socialized and consumed beer over approximately five hours. OFFICER CHRISTIAN stated to SERGEANT DURAN that he was fine to drive.

55.   At approximately 2:00 a.m. on June 14, 2003 OFFICER CHRISTIAN left SERGEANT DURAN'S residence and drove to his residence in El Centro, California. While driving through the 1500 block of West Main Street, intersection of Main and Imperial, he was contacted by an El Centro police officer, Officer Sawyer, who pulled him over to the side of the road. OFFICER CHRISTIAN identified himself as a Calexico police officer.  Officer Sawyer never mentioned anything about OFFICER CHRISTIAN'S driving or driving ability.  Officer Sawyer stated that the reason he pulled him was that he received a call from a citizen that a driver of a vehicle seemed slumped over or was possibly sleeping behind the wheel.  OFFICER CHRISTIAN did not recall putting his head down on the wheel or losing consciousness, or anything of the sort, at any time while driving.

56.   A second El Centro police officer arrived on the scene, Sergeant John Seaman ("Sergeant Seaman").  Sergeant Seaman asked OFFICER CHRISTIAN if he had been drinking and he replied he had.  Sergeant Seaman then contacted the CPD and the on duty Sergeant, Sergeant Carlos Padilla ("Sergeant Padilla"), who arrived on the scene and picked up OFFICER CHRISTIAN, who he subsequently drove to the CPD.  Sergeant Padilla ordered OFFICER CHRISTIAN to blow into a breathilizer machine for what he stated were administrative purposes.  The breathalizer registered a .14 and OFFICER CHRISTIAN was not given a lybarger admonishment.

57.   No one stated to OFFICER CHRISTIAN that he was under arrest prior to being transported to the CPD.  OFFICER CHRISTIAN did not feel free to leave

-12-

1  the scene of the stop and go home.  He felt obligated to cooperate with Sergeant

2  Padilla and accompany him to the CPD.  After the completion of the breathalizer test,

3  Sergeant Padilla drove him to his residence.

4      58.  Since the above referenced incident, OFFICER CHRISTIAN was placed

5  on and still remains on administrative leave pursuant to SANCHEZ'S and

6  NEUJAHR'S orders.  OFFICER CHRISTIAN has subsequently received a letter of

7  intent to discipline, which he believes will be termination.

8      59.  OFFICER CHRISTIAN is being disciplined and retaliated against for

9  being the Vice President of the CPOA and being engaged in the AR-15 rifle

10  controversy with SANCHEZ, ESTRADA, and the City Council

11      60.  Several other officers of the CPD have been the subject of similar

12  incidents with little or no disciplinary action or admonishment taken against them by

13  SANCHEZ or the CPD.

14      61.  Sergeant Padilla was assigned to a federal task force when he was driving

15  a police department vehicle.  Sergeant Padilla was allegedly en route to his residence

16  when he was discovered by the Imperial Police Department driving while under the

17  influence. He was allegedly discovered slumped over the steering wheel of his vehicle

18  in an intoxicated condition by the Imperial Police Department.  The police officers

19  transported Sergeant Padilla to his residence.  As a result of this event, Sergeant

20  Padilla was only transferred back to uniform patrol, never placed on administrative

21  leave, and was not terminated.

22      62. City Council Official RENISON was overheard , speaking with SANCHEZ

23  telephonically.  RENISON stated to SANCHEZ that they would need to make an

24  example out of officer OFFICER CHRISTIAN because of the incident where he was

25  placed on administrative leave.

26      63.  NEUJAHR stated to CITY employees and CPD police officers  that

27  OFFICER CHRISTIAN was going to be made an example of.

28      64.  Lieutenant Tangedal was at all relevant times in charge of police officer

1  discipline. Lieutenant Tangedal recommended in a written recommendation form that
2  OFFICER CHRISTIAN receive a three day suspension and removal from the
3  Detective Unit.   SANCHEZ willfully, intentionally, and maliciously withheld
4  Lieutenant Tangedal's report from the notice of intent to discipline.  This report has
5  not been shown or given to OFFICER CHRISTIAN as of the date of this filing.

6      65.   The El Centro police officers were requested by SANCHEZ and the CPD
7  to prepare written memos regarding the incident involving OFFICER CHRISTIAN
8  being pulled over by El Centro police officers. SANCHEZ disapproved of the memos
9  because they did not implicate Sergeant Duran, who SANCHEZ wanted to make
10 responsible for the incident. SANCHEZ told Lieutenant Tangedal to reinterview the
11 El Centro officers involved in the incident in order to place blame on Sergeant Duran.
12 This was in retaliation for being involved with and a vocal member of the CPOA.

13      **FACTS COMMON TO OFFICER GONZALEZ AND DEFENDANTS**

14      66.   At all times relevant herein, OFFICER GONZALEZ was an employee of
15 the CPD as a police officer pursuant to California Penal Code section 830.32.

16      67.   OFFICER GONZALEZ began his employment with Defendant CITY
17 and CPD on or about April 18, 2002 as a police officer recruit.   OFFICER
18 GONZALEZ was promoted to the position of police officer on or about September 27,
19 2002. OFFICER GONZALEZ had been continuously employed since that time as a
20 police officer with the Department, up to his unlawful termination on or about
21 September 30, 2003.

22      68.   OFFICER GONZALEZ is, and at all times mentioned in this Complaint
23 was, a resident of the County of San Diego, State of California.

24      69.   On or about September 27, 2002, OFFICER GONZALEZ joined the
25 CPOA and was a dues paying member up to, and including his termination on
26 September 30, 2003 .

27      70.  OFFICER GONZALEZ was employed with Defendant CPD with various
28 terms and conditions of employment which the Defendants breached by terminating

-14-

his employment for unlawful reasons.

71.   OFFICER GONZALEZ is informed and believes, and on that basis allege, that Defendants failed to comply with the terms and conditions of his employment by:

      a)  Failing to treat OFFICER GONZALEZ in accordance with Defendants' stated policies;

      b)  Terminating OFFICER GONZALEZ in violation of public policy;

      c)  Terminating OFFICER GONZALEZ without following proper procedures, policies, and practices;

      d)  Punitively extending OFFICER GONZALEZ'S probationary period for a period of six months;

      e)  Punitively terminating OFFICER GONZALEZ'S employment four days after extending his probationary period;

      f)  Retaliating against OFFICER GONZALEZ for exercising his First and Fourteenth Amendment rights to freedom of association by being a member of the CPOA and participating in CPOA activities, including, but not limited to being present when the officers turned in their AR-15s, which occurred on or about September 24, 2003 outside of the CPD;

      g)  Refusing to give OFFICER GONZALEZ the opportunity to succeed at his professions; and

72.   At all times during OFFICER GONZALEZ'S employment with the CPD, he demonstrated exceptional job performance and dedication.   OFFICER GONZALEZ'S numerous letters of commendations, letters of praise from citizens, and complete absence of any disciplinary admonishments or actions from up to, and including, the date of his termination on September 30, 2003 reflect and are indicative of his superior job performance.

73.   OFFICER GONZALEZ was a probationary employee with the CPD. OFFICER GONZALEZ'S probationary period was to end on or about September 28,

1 | 2003 at which time he was to become a permanent employee of the CPD.

2 |      74.    On or about September 24, 2003 OFFICER GONZALEZ was present and
3 | participated in the CPOA demonstration where the officers of the CPOA turned in
4 | their AR-15 rifles.  OFFICER GONZALEZ was in plain clothes and did not wear
5 | anything to disguise his identity.  He was only present to show support for his CPOA
6 | comrades.

7 |      75.    On or about September 25, 2003 at approximately 3:00 p.m., OFFICER
8 | GONZALEZ received a letter signed by NEUJAHR, the administration services
9 | LIEUTENANT, which was delivered by a Sergeant Gerardo to his residence.  The
10 | letter extended OFFICER GONZALEZ'S status as a probationary Police Officer for
11 | a period of six (6) months, through February 27, 2004.  Neither the Letter nor any
12 | official, employee, or agent of the CITY stated any reason as to why OFFICER
13 | GONZALEZ'S probationary was extended.  The extension of his probationary period
14 | was done so punitively and in retaliation for his CPOA activities.

15 |      76.    On or about September 25, 2003 between 3:30 p.m. and 4:00 p.m.,
16 | OFFICER GONZALEZ went to the CPD to speak with NEUJAHR to inquire as to
17 | why his probationary period was extended.

18 |      77.    NEUJAHR informed OFFICER GONZALEZ that the reason for
19 | extending his probationary period was because of his participation in the CPOA
20 | demonstration outside the CPD on September 24, 2003.  NEUJAHR stated to
21 | OFFICER GONZALEZ that he should not have been at the demonstration on
22 | September 24, 2003. NEUJAHR said to OFFICER GONZALEZ to the effect that: "its
23 | harder to say goodbye, or nice working with you after your probation is over."  In
24 | other words, it is more difficult for the CPD to fire OFFICER GONZALEZ once he
25 | becomes a permanent employee. GONZALEZ explained to NEUJAHR that he was
26 | merely supporting the CPOA on his day off from work.

27 |      78.    NEUJAHR stated to OFFICER GONZALEZ that he would not be fired
28 | unless he really messed up.  NEUJAHR and SANCHEZ failed to give any legitimate

1 or lawful reason for extending his probation. The only explanation given was because
2 he was a member of, and participated in, the CPOA demonstration where the officers
3 turned in their AR-15s.

4     79.    On or about October 1, 2003 at about 9:45 a.m., Sergeant Gerardo went
5 to OFFICER GONZALEZ'S residence and delivered a letter signed by SANCHEZ
6 which stated that as of October 1, 2003, OFFICER GONZALEZ'S employment with
7 the CPD had been terminated. There was no reason given in either the letter or in any
8 communication with any employee or official of the CITY or CPD as to the reason for
9 OFFICER GONZALEZ'S termination. The reason for OFFICER GONZALEZ'S
10 terminations is because of his association, participation, and activities with the CPOA
11 as indicated by the statements and actions of the Defendants.

12     80.    OFFICER GONZALEZ is informed and believes, and on that basis
13 alleges, that as a result of the employment relationship which existed between him
14 and Defendants, the expressed and implied promises made in connection with that
15 relationship, and that acts, conduct, and communications resulting in these implied
16 promises, Defendants promised to act in good faith toward OFFICER GONZALEZ
17 and to deal fairly with him which requires, among other things, the following:

18          a)    Each party in the employment relationship must act with good
19                faith towards the other concerning all matters related to the
20                employment;
21          b)    Each party in the relationship must act with fairness towards the
22                other concerning all matters related to the employment;
23          c)    Neither party would take any action to unfairly prevent the other
24                from obtaining the benefits of the employment relationship;
25          d)    Defendants CITY and CPD would treat all employees who are
26                similarly situated in a similar fashion;
27          e)    Defendants CITY and CPD would comply with its own
28                representations, rules, policies, and procedures in dealing with

-17-

OFFICER GONZALEZ;

f)    Defendants CITY and CPD would not terminate OFFICER GONZALEZ without a fair, honest, lawful, and legitimate cause, regulated by good faith on behalf of CITY and CPD;

g)    Defendants CITY and CPD would not terminate OFFICER GONZALEZ in an unfair manner.

81.   The treatment of OFFICE GONZALEZ by CITY and CPD was wrongful, in bad faith, arbitrary, capricious, and unfair, and thus a violation of the legal duties of the CITY and CPD.  OFFICER GONZALEZ further alleges that CITY and CPD:

a)    Repeatedly refused to abide by its own policies and statutory guidelines when

dealing with OFFICER GONZALEZ;

b)    Repeatedly denied the existence of the rights of employment by OFFICER

GONZALEZ;

c)    Unfairly prevented OFFICER GONZALEZ from obtaining the benefits of his employment relationship;

d)    Terminated OFFICER GONZALEZ for false and unlawful reasons, and in a manner that was inconsistent with the policies and procedures of CITY and CPD;

e)    Told OFFICER GONZALEZ his probationary period was extended because of his affiliation and activities with the CPOA;

f)    Terminated OFFICER GONZALEZ for expressing his rights guaranteed by the California and United States Constitutions;

g)    Refused and failed to abide by the Public Safety Officers Procedural Bill of Rights Act, and violated the statutory, common law, federal, and state constitutional rights of OFFICER GONZALEZ'S when dealing with him in capacity as a Police

1    Officer with the CITY and CPD.

2    82.    Plaintiff has at all times duly performed all the conditions of his
3    employment until prevented from doing so be the Defendants.  AT all times relevant
4    to this Complaint, Plaintiff has been ready, willing, and able to perform his job as a
5    Police Officer.

6    ### FIRST CAUSE OF ACTION

7    ### FOR WRONGFUL TERMINATION OF PUBLIC POLICY

8    (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;

9    RENISON; PERRONE; and DOES 1 through 10, Inclusive)

10    83.    Plaintiffs repeat and reallege paragraphs 1 through 82, inclusive, as
11    though fully set forth at this point and incorporated by reference herein.

12    84.    To accomplish OFFICER GONZALEZ'S termination, Defendants
13    conspired to, and did so, violate OFFICER GONZALEZ'S rights which are protected
14    by the federal and state constitutions, as well as by state statutory and common law,
15    including, but not limited to, violations of OFFICER GONZALEZ'S rights to free
16    speech, and substantive and procedural due process.  The

17    violations of these most basic rights is a clear and indefensible affront to the public
18    policy of not only this state, but the nation.

19    85.    All of the acts by Defendants alleged herein were done to punish
20    OFFICER GONZALEZ for his protected speech and associational activities.

21    86.    Defendants' termination of OFFICER GONZALEZ violates the
22    fundamental public  policy goal of the Public Safety Officers' Procedural Bill of
23    Rights Act to afford Peace Officers the same rights and privileges that are enjoyed by
24    private citizens.  In enacting the Public Safety Officers' Bill of Rights, the California
25    legislature determined that the rights encompassed by the statute were a matter of
26    statewide concern.

27    87.    As Defendants' termination of OFFICER GONZALEZ'S employment
28    with the CITY violated the Public Safety Officers' Bill of Rights, Defendants' conduct

-19-

1 | has violated the public policy goals of the state of California.

2 |     88.    By terminating OFFICER GONZALEZ when he had not violated any
3 | statute, ordinance, rule, or any other policy or procedure of the CITY, Defendants'
4 | decision to discharge him was a wrongful termination in violation of California public
5 | policy, and was unlawful, invalid, and made only in response to political pressure,
6 | personal bias and animus, ill will, and malice. As such, Defendants' decision to
7 | terminate the officers was arbitrary, capricious, wrongful, unlawful and not supported
8 | by evidence or any lawful reason or rationale.

9 |     89.    At all relevant times herein, the Defendants, and each of them had a legal
10 | obligation to conduct their affairs in compliance with public policy and all relevant
11 | laws, including but not limited to, those policies set forth in Article 1, sections 2 and
12 | 7 seven of the California Constitution, California Penal Code section 136.1, California
13 | Government Code section 3300 et seq., California Labor Code section 1102.5, and any
14 | other applicable Codes of Conduct, and to not operate their affairs in contravention
15 | thereof. Defendants were also obligated not to act in an arbitrary and capricious
16 | manner.

17 |     90.    The decision to violate OFFICER GONZALEZ'S Free Speech Rights and
18 | to terminate him, and the methods employed, were authorized and ratified by each of
19 | the Defendants.

20 |     91.    As a direct, foreseeable, and proximate result of the wrongful termination
21 | of OFFICER GONZALEZ, he has suffered and continues to suffer losses in earnings,
22 | bonuses, and job benefits, and expenses incurred in the search for comparable
23 | employment and will continue to lose earnings bonuses, and job benefits in an amount
24 | unknown, the precise amount which will be proven at trial. OFFICER GONZALEZ
25 | claims this amount together with prejudgment interest pursuant to California Civil
26 | Code section 3287 and pursuant to any other provision of law providing for
27 | prejudgment interest.

28 |     92.    As a further direct, foreseeable, and proximate result of the unlawful

1  conduct of the Defendants, OFFICER GONZALEZ has suffered extreme and severe

2  anguish, humiliation, mental, and emotional distress, nervousness, tension, anxiety,

3  and depressions, the extent of which is not fully known at this time, and the amount

4  of damages caused by the conduct of defendants is not yet fully ascertained, the

5  precise amount to be proven at the time of trial.  OFFICER GONZALEZ claims this

6  amount, together with prejudgment interest pursuant to California Civil Code section

7  3287 and pursuant to any other provision of law providing for prejudgment interest.

8      93.   Because the acts taken towards OFFICER GONZALEZ were carried out

9  by Defendants, and all of them, who are managerial employees and officials acting in

10  deliberate, cold, callous, malicious, oppressive, and intentional manner in order to

11  injure and damage him, OFFICER GONZALEZ requests the assessment of punitive

12  damages against the individual defendants in an amount appropriate to punish and to

13  make an example of defendants.

14      94.   As a direct and proximate cause of the actions taken by Defendants, and

15  each of them, alleged herein, OFFICER GONZALEZ has been damaged in an amount

16  according to proof at trial.

17                    **SECOND CAUSE OF ACTION**

18  **FOR VIOLATION OF 42 U.S.C. § 1983 PROCEDURAL DUE PROCESS**

19     **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

20  **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

21      95.   Plaintiffs repeat and reallege paragraphs 1 through 94, inclusive, as though

22  fully set forth at this point and incorporated by reference herein.

23      96.   All of the acts by Defendants alleged herein were done to punish

24  Plaintiffs, and all of them for their protected speech and associational activities.

25      97.   By not affording OFFICER GONZALEZ the proper opportunity to be

26  heard before his termination and by denying him any opportunity to appeal the

27  termination decision, Defendants have deprived OFFICER GONZALEZ of his

28  procedural due process rights.

98.    By not affording OFFICER CHRISTIAN the proper opportunity to be heard before being placed on administrative leave and by denying him any opportunity to appeal the decision, Defendants have deprived OFFICER CHRISTIAN of his procedural due process rights.

99.    By not affording all Plaintiffs the proper opportunity to be heard before taking adverse employment actions against them, Defendants have deprived OFFICER GONZALEZ of his procedural due process rights.

100.    The acts done by Defendants constitute a calculated and continuous course of conduct which violated and continues to violated Plaintiffs' rights to exercise Free Speech and Free Association as guaranteed to them by the First and Fourteenth Amendments to the Constitution of the United States and the California Constitution.

101.    Defendants acted in concert and without authorization of law, willfully, knowingly, and purposely, with the specific intent of depriving Plaintiffs of their First Amendment rights.

102.    As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiffs have sustained injuries to their reputations, humiliation, and embarrassment, as well as severe mental anguish and foregone past and future earnings and benefits, to which he would have been otherwise entitled, and other economic loss.

103.    Defendants knew, or should have known, that their actions deprived Plaintiffs of their First Amendment rights and are, therefore, rendered personally liable under 42 U.S.C. section 1983.

104.    Defendants' actions depriving Plaintiffs of their first Amendment Rights resulted from the long standing policies or customs of Defendant City, and/or were undertaken, directed or ratified by policy making officials of the City, so as to render the City liable as a "person" acting under the color of law pursuant to 42 U.S.C. section 1983.

1   105.   At the time of OFFICER GONZALEZ'S termination, he had a reasonable

2   expectation of continued employment pursuant to the terms and conditions of the

3   MOU between the CITY and CPOA

4   106.   As a direct and proximate cause of the acts of cross-defendants, and each

5   of them, cross-claimants have been seriously and irreversibly damaged in an amount

6   according to proof at trial.

7                    **THIRD CAUSE OF ACTION**

8   **FOR VIOLATION OF 42 U.S.C. § 1983 (SUBSTANTIVE DUE PROCESS)**

9      **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

10  **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

11   107.   Plaintiffs repeat and reallege paragraphs 1 through 106, inclusive, as

12  though fully set forth at this point and incorporated by reference herein.

13   108.   All of the acts by Defendants alleged herein were done to punish

14  Plaintiff for their protected speech and associational activities.

15   109.   OFFICER GONZALEZ has a protected property interest in his

16  employment with the CITY.  By terminating OFFICER GONZALEZ, Defendants

17  completely disregarded and deprived him of his fundamental rights to due process

18  which are protected by the Fifth and Fourteenth Amendments to the United States

19  Constitution.

20   110.   In so doing all the acts described and alleged herein, Defendants, and

21  each of them, were acting under the color of state law and acted to deprive Plaintiffs

22  of the due process of law.  At the time Defendants took these actions, Defendants

23  knew or, reasonably should have known that their conduct would violate Plaintiffs'

24  clearly established rights.

25   111.   Each of the actions taken by cross-defendants, and each of them, was

26  taken in gross disregard of the rights of cross-claimants and/or with ill will, bad

27  feelings, and malice towards the cross-claimants, which shall entitle cross-claimants

28  to punitive damages against each said cross-defendants, except the CITY, so long as

1  it remains legally immune therefrom.

2      112.  As a direct and proximate cause of the acts of cross-defendants, and each

3  of them, cross-claimants have been damaged in an amount according to proof at trial.

4

5  **FOURTH CAUSE OF ACTION**

6  **FOR VIOLATION OF CALIFORNIA CONSTITUTION**

7  **ART. I, §7(DUE PROCESS)**

8  **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

9  **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

10      113.  Plaintiffs repeat and reallege paragraphs 1 through 112, inclusive, as

11  though fully set forth at this point and incorporated by reference herein.

12      114.  OFFICER GONZALEZ has a protected property interest in his

13  employment by the CITY.  By terminating OFFICER GONZALEZ, Defendants have

14  deprived him of his rights protected by Article I, § 7 of the California Constitution.

15      115.  In so doing all the acts described and alleged herein, Defendants, and

16  each of them, were acting under the color of state law and acted to deprive OFFICER

17  GONZALEZ of the due process of law.  At the time Defendants took these actions,

18  Defendants knew or should have known that their conduct would violate OFFICER

19  GONZALEZ'S clearly established rights.

20      116.  Each of the actions taken by Defendants, and each of them, was taken in

21  gross disregard of the rights of Plaintiffs and/or with ill will, bad feelings, and malice

22  towards the Plaintiffs, which shall entitle Plaintiffs to punitive damages against each

23  said Defendant, except the CITY, so long as it remains legally immune therefrom.

24      117.  As a direct and proximate cause of the acts of cross-defendants, and each

25  of them, cross-claimants have been damaged in an amount according to proof at trial.

26  **FIFTH CAUSE OF ACTION**

27  **FOR VIOLATION OF CALIFORNIA GOVERNMENT CODE § 3300 et seq.**

28  **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

**RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

118.   Plaintiffs repeat and reallege paragraphs 1 through 117, inclusive, as though fully set forth at this point and incorporated by reference herein.

119.   Defendants investigation of OFFICER HACKETT subjected him to the possibility of punitive action.   Prior to the commencement of the investigation, Defendants failed to disclose the full scope of their investigation.

120.   By depriving Plaintiffs of their administrative appeals process, when Plaintiffs' probationary periods had been completed, and then terminating Plaintiffs without just cause, defendants violated Plaintiffs' statutory rights to protect and defend their interests in continued and unsanctioned employment with CITY under California Government Code §§ 3300 et. seq.

121.   By doing the things alleged herein to have been done, including, but not limited to, refusal to provide OFFICER CHRISTIAN an administrative appeal from discipline, terminating OFFICER GONZALEZ'S employment, and committing all other unlawful employment actions against Plaintiffs as described herein, Defendants, through a continuing course of conduct, violated Plaintiffs' rights as secured by the Public Safety Officers Procedural Bill of Rights Act, California Government Code § 3300 *et seq.*

122.   By doing the things alleged herein to have been done Defendants intended to, and did, unlawfully retaliate against Plaintiffs, and all of them, because of their lawful exercise of rights guaranteed him be the Public Safety Officers Procedural Bill of Rights Act, California Government Code §§ 3300 *et seq.*, in violation of California Government Code §§ 3304 (a) and 3309.5.

123.   Plaintiffs, therefore, are entitled to immediate appropriate injunctive relief to remedy the violations of the Public Safety Officers Procedural Bill of Rights Act, California Government Code §§ 3300 *et seq.*, alleged herein, and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting

1  Defendants from taking any further punitive actions against Plaintiffs.

2      124.   As a direct and proximate cause of the actions taken by Defendants, and
3  each of them, alleged herein, Plaintiffs have been damaged in an amount according to
4  proof at trial.

5  **SIXTH CAUSE OF ACTION**

6  **FOR VIOLATION OF 42 U.S.C. § 1983 (FREE SPEECH)**

7  **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

8  **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

9      125.   Plaintiffs repeat and reallege paragraphs 1 through 124, inclusive, as
10  though fully set forth at this point and incorporated by reference herein.

11      126.   All of the acts by Defendants alleged herein were done to punish
12  Plaintiffs, and all of them for their protected speech and associational activities.

13      127.   In so doing all the acts described and alleged herein, Defendants, and
14  each of them, have deprived Plaintiffs of their rights protected by the First, and
15  Fourteenth Amendments to the United States Constitution.

16      128.   In so doing all the acts described and alleged herein, Defendants, and
17  each of them, were acting under the color of state law and acted to deprive Plaintiffs
18  of their rights, privileges and immunities which are clearly established at the time
19  Defendants took the actions; and Defendants knew or should have known that their
20  conduct would violate these rights, privileges and immunities.

21      129.   Each of the actions taken by Defendants, and each of them, was taken in
22  gross disregard of the rights of Plaintiffs and/or with ill will, bad feelings, and malice
23  towards the Plaintiffs, which shall entitle Plaintiffs to punitive damages against each
24  said Defendant, except the CITY, so long as it remains legally immune therefrom.

25      130.   As a direct and proximate cause of the acts of Defendants, and each of
26  them, Plaintiffs have been damaged in an amount according to proof at trial.

27  **SEVENTH CAUSE OF ACTION**

28  **FOR VIOLATION OF CALIFORNIA CONSTITUTION**

### ART. I, § 2 (FREE SPEECH)

### (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA; RENISON; PERRONE; and DOES 1 through 10, Inclusive)

131.    Plaintiffs repeat and reallege paragraphs 1 through 130, inclusive, as though fully set forth at this point and incorporated by reference herein.

132.    All of the acts by Defendants alleged herein were done to punish Plaintiffs for their protected speech and associational activities.

133.    The right of OFFICER GONZALEZ, and all other members of the CPOA to free speech and the right to be affiliated with, join, participate with and partake in lawful union activities with the CPOA is protected by Article 1, Section 2 of the California Constitution.

134.    The attempted and effective acts of Defendants to prevent Plaintiffs from exercising their right to free speech by retaliating, humiliating, creating a hostile work environment, threatening, taking punitive employment action, including suspensions and termination against Plaintiffs, violates the Free Speech Rights of Plaintiffs and is actionable pursuant to Article 1, Section 2 of the California Constitution.

135.    The conduct of Defendants in terminating OFFICER GONZALEZ and placing  OFFICER CHRISTIAN on leave was, and all other acts described herein against other CPOA members, were in retaliation for exercising their right to freedom of association and speech, violates the Free Speech Rights of Plaintiffs and is actionable pursuant to Article 1, Section 2 of the California Constitution.

136.    The decision to violate Plaintiffs' Free Speech Rights and to terminate Officer Gonzalez, were done by methods employed, and were authorized and ratified by each of the Defendants.

137.    In so doing all the acts described and alleged herein, Defendants, and each of them, were acting under the color of state law and acted to deprive Plaintiffs of their rights, privileges and immunities which are clearly established at the time Defendants took the actions; and Defendants knew or should have known that their

1   conduct would violate these rights, privileges and immunities.

2   138.   Each of the actions taken by Defendants, and each of them, was taken
3   in gross disregard of Plaintiffs' rights and/or with ill will, bad feelings, intentionally,
4   and malice towards the Plaintiffs, which shall entitle Plaintiffs to punitive damages
5   against each said Defendant, except the CITY, so long as it remains legally immune
6   therefrom.

7   139.   As a direct, foreseeable, and proximate result of the wrongful termination
8   of OFFICER GONZALEZ and placing OFFICER CHRISTIAN on administrative
9   leave, both Police Officers have suffered and continue to suffer losses in earnings,
10   bonuses, job benefits, and expenses incurred in the search for comparable employment
11   and will continue to lose earnings, bonuses, and job benefits in an amount unknown,
12   the precise amount of which will be proven at trial.  Plaintiff Officers claim this
13   amount together with prejudgment interest pursuant to California Civil Code section
14   3287 and pursuant to any other provision of la providing for prejudgment interest.

15   140.   As a further direct, foreseeable, and proximate result of the unlawful
16   conduct of the Defendants, Plaintiffs, and all of them, have suffered extreme and
17   severe anguish, humiliation, mental, and emotional distress, nervousness, tension,
18   anxiety, and depressions, the extent of which is not fully known at this time, and the
19   amount of damages caused by the conduct of Defendants is not yet fully ascertained,
20   the precise amount to be proven at the time of trial.  Plaintiffs claims this amount,
21   together with prejudgment interest pursuant to California Civil Code section 3287 and
22   pursuant to any other provision of law providing for prejudgment interest.

23   141.   Because the acts taken towards Plaintiffs were carried out by Defendants,
24   and all of them, who are managerial employees and officials acting in deliberate, cold,
25   callous, malicious, oppressive, and intentional manner in order to injure and damage
26   Plaintiffs, Plaintiffs request the assessment of punitive damages against the individual
27   defendants in an amount appropriate to punish and to make an example of defendants.

28   142.   As a direct and proximate cause of the acts of cross-defendants, and each

1  of them, cross-claimants have been damaged in an amount according to proof at trial.

2

3  ## EIGHTH CAUSE OF ACTION

4  **FOR VIOLATION OF CALIFORNIA CONSTITUTION ART. I, § 1**

5  **(PRIVACY) (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR;**

6  **ESTRADA; RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

7      143.   Plaintiffs repeat and reallege paragraphs 1 through 142, inclusive, as

8  though fully set forth at this point and incorporated by reference herein.

9      144.   The unlawful and irresponsible publication of information which

10  Defendants caused to occur constitutes a serious and unjustifiable intrusion into cross-

11  claimants' privacy interests.

12      145.   All acts or omissions alleged to have been engaged in by any Defendant

13  are alleged to have been engaged in with malice, intent, and in callous, reckless and

14  wanton disregard to the constitutional rights of cross-claimants.

15      146.   As a direct and proximate cause of Defendants' serious and unjustifiable

16  invasion of Plaintiffs' privacy, Plaintiffs have been damaged in an amount according

17  to proof at the time of trial.

18  ## NINTH CAUSE OF ACTION

19  ## CONSPIRACY

20  **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

21  **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

22      147.   Plaintiffs repeat and reallege paragraphs 1 through 146, inclusive, as

23  though fully set forth at this point and incorporated by reference herein.

24      148.   The violation of Plaintiff's rights as described herein, and all of them,

25  was accomplished by a concerted effort on the part of all the defendants to commit

26  unlawful acts against the Plaintiffs, and all of them.

27      149.   As a direct, foreseeable, and proximate result of the wrongful

28  termination of OFFICER GONZALEZ, punitively, arbitrarily, and maliciously placing

OFFICER CHRISTIAN on administrative leave, and retaliating against, harassing, intimidating, and abusing Plaintiffs, and each of them for participating in associational activities, Plaintiffs have suffered and continue to suffer losses in earnings, bonuses, and job benefits, and expenses incurred in the search for comparable employment and will continue to lose earnings bonuses, and job benefits in an amount unknown, the precise amount which will be proven at trial. Plaintiffs, and each of them, claim this amount together with prejudgment interest pursuant to California Civil Code section 3287 and pursuant to any other provision of law providing for prejudgment interest.

150.    As a further direct, foreseeable, and proximate result of the unlawful conduct of the Defendants described herein, Plaintiffs, and all of them, have suffered extreme and severe anguish, humiliation, mental, and emotional distress, nervousness, tension, anxiety, and depressions, the extent of which is not fully known at this time, and the amount of damages caused by the conduct of defendants is not yet fully ascertained, the precise amount to be proven at the time of trial. Plaintiffs claim this amount, together with prejudgment interest pursuant to California Civil Code section 3287 and pursuant to any other provision of law providing for prejudgment interest.

151.    By doing the acts alleged herein, Defendants acted in concert, in furtherance of a tacit, express and implied agreement, to silence Plaintiffs, stigmatize their reputations in the community and within their chosen profession, deny them the benefits and emoluments of their property rights and liberty interests in their employment, chill their protected speech and associational activities and, to otherwise deprive Plaintiffs of their constitutionally protected civil rights provided by the California and United States Constitutions and Statutes, California Government Code.

152.    Defendants did in fact deprive Plaintiffs of his civil rights set forth herein as a result of a conspiracy among themselves to do so.

153.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, physical injuries, pain and suffering, mental anguish, emotional distress, and economic damages. Plaintiffs are thereby entitled to

1 | general, compensatory and punitive damages in amounts to be proven at trial.

2 |     154.  Because the acts taken towards Plaintiffs were carried out by Defendants,
3 | and all of them, who are managerial employees and officials acting in deliberate, cold,
4 | callous, malicious, oppressive, and in an intentional manner in order to injure and
5 | damage Plaintiffs, Plaintiffs request the assessment of punitive damages against the
6 | individual defendants in an amount appropriate to punish and to make an example of
7 | defendants.

8 | ### TENTH CAUSE OF ACTION

9 | ### FOR VIOLATION OF 42 U.S.C. § 1983 (DEPRIVATION OF PROPERTY
10 | ### WITHOUT DUE PROCESS OF THE LAW)

11 | **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**
12 | **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

13 |     155.  Plaintiffs repeat and reallege paragraphs 1 through 154, inclusive, as
14 | though fully set forth at this point and incorporated by reference herein.

15 |     156.  OFFICER GONZALEZ AND OFFICER CHRISTIAN have, and had at
16 | all times relevant hereto, a protected property interest in their employment as Police
17 | Officers for the CITY and CPD.

18 |     157.  By doing the things alleged herein to have been done, Defendants,
19 | through a continuing course of conduct, have, for all intents and purposes, deprived
20 | OFFICER GONZALEZ and OFFICER CHRISTIAN of their property interests in their
21 | employment as police officers for the CITY, without Due Process of Law, as such
22 | right to such Due Process is secured to Plaintiffs by the Fourteenth Amendment to the
23 | Constitution of the United States, the Laws of the State of California, the Rules,
24 | Policies and Ordinances of the CITY and, the Memoranda of Understanding between
25 | the CITY and the CPOA, in violation of 42 U.S.C. § 1983.

26 |     158.  The acts of Defendants did, in fact, deprive OFFICER GONZALEZ
27 | AND OFFICER CHRISTIAN of their property rights as those rights are secured to
28 | them by the provisions of the Due Process Clause of the Fourteenth Amendment to the

Constitution of the United States and by 42 U.S.C. § 1983 and the Statutes and Laws of the State of California, the Rules, Policies and Ordinances of the CITY and, the Memorandum of Understanding between the CITY and the CPOA.

159.   As a result of the foregoing acts committed against Plaintiffs by Defendants, OFFICER GONZALEZ AND OFFICER CHRISTIAN sustained injury to their reputation, humiliation and embarrassment, as well as severe mental anguish and foregone past and future earnings and benefits, to which they would have been otherwise entitled, and other economic loss.

160.   Defendants knew, or should have known, that their actions deprived OFFICER GONZALEZ AND CHRISTIAN of their property rights without Due Process of Law and are, therefore, rendered personally liable under 42 U.S.C. § 1983.

161.   Defendants' actions depriving OFFICER GONZALEZ and OFFICER CHRISTIAN of their property rights without Due Process of Law resulted from the long standing policies or customs of Defendant CITY, and/or were undertaken, directed or ratified by policy making officials of the CITY, so as to render the CITY liable as a "person" acting color of law under 42 U.S.C. § 1983.

## ELEVENTH CAUSE OF ACTION

## 42 U.S.C. § 1983 - DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW

### (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA; RENISON; PERRONE; and DOES 1 through 10, Inclusive)

162.   Plaintiffs repeat and reallege paragraphs 1 through 161, inclusive, as though fully set forth at this point and incorporated by reference herein.

163.   Plaintiffs have, and had at all times relevant hereto, a protected liberty interest in seeking employment in his chosen profession as a police officer.

164.   By doing the things alleged herein to have been done, Defendants, through a continuing course of conduct, deprived Plaintiff of his liberty interest in seeking employment in his chosen profession as a police officer without Due Process

of Law, as such right to such Due Process is secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States, the Laws of the State of California, the Rules, Policies and Ordinances of the City of Huntington Beach and, the Memoranda of Understanding between the CITY and the CPOA, in violation of 42 U.S.C. § 1983.

165.   The acts of Defendants did, in fact, deprive Plaintiffs of their liberty interest as that interest is secured to Plaintiffs by the provisions of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983 and the Statutes and Laws of the State of California, the Rules, Policies and Ordinances of the CITY and, the Memorandum of Understanding between the CITY and CPOA.

166.   As a result of the foregoing acts committed against Plaintiffs by Defendants, Plaintiffs sustained injury to his reputation, humiliation and embarrassment, as well as severe mental anguish and foregone past and future earnings and benefits, to which he would have been otherwise entitled, and other economic loss.

167.   Defendants knew, or should have known, that their actions deprived Plaintiffs of their liberty interest without Due Process of Law and are, therefore, rendered personally liable under 42 U.S.C. § 1983.

168.   Defendants' actions depriving Plaintiffs of their liberty interest without Due Process of Law resulted from the long standing policies or customs of Defendant City, and/or were undertaken, directed or ratified by policy making officials of the CITY, so as to render the CITY liable as a "person" acting color of law under 42 U.S.C. § 1983.

### TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;

1 | **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

2 | 169.   Plaintiffs repeat and reallege paragraphs 1 through 168, inclusive, as

3 | though fully set

4 | forth at this point and incorporated by reference herein.

5 | 170.   By doing the things alleged herein to have been done, Defendants, and

6 | each of them, acted with the intent to, and did, cause Plaintiffs severe emotional

7 | distress. The conduct of Defendants in so doing was extreme and outrageous and not

8 | tolerable by persons in a reasonable society.

9 | 171.   As a direct and proximate result of Defendants' actions, Plaintiffs have

10 | suffered, and will continue to suffer, physical injuries, pain and suffering, mental

11 | anguish, emotional distress, and economic damages.  Plaintiffs are thereby entitled to

12 | general, compensatory and punitive damages in amounts to be proven at trial.

13 | **THIRTEENTH CAUSE OF ACTION**

14 | **(Violation of Government Code § 3500 et seq.)**

15 | **(Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;**

16 | **RENISON; PERRONE; and DOES 1 through 10, Inclusive)**

17 | 172.   Plaintiffs repeat and reallege paragraphs 1 through 171, inclusive, as

18 | though fully set forth at this point and incorporated by reference herein.

19 | 173.   Defendants, and each of them, by seeking to enjoin and permanently

20 | restrain the CCPOA website and restrain Plaintiffs' associational activities, are

21 | engaging in oppressive and arbitrary conduct whose underlying intent is to

22 | dissuade the Plaintiffs and the CCPOA membership from its rights to freely

23 | assemble, associate, and speak out, politically, and otherwise.  Such acts

24 | undertaken by Defendants are retaliatory in nature and are part of a continuing

25 | concerted action by Defendants to destroy the CCPOA and its ability to function

26 | and act as a viable police employee bargaining unit.  Such acts are in violation of

27 | their legal obligations set forth in Government Code §§ 3500, et seq.

28 | ///

## FOURTEENTH CAUSE OF ACTION

### FOR VIOLATION OF CALIFORNIA GOVERNMENT CODE § 3304(b)

### (Against Defendants CITY; CPD; SANCHEZ; NEUJAHR; ESTRADA;

### RENISON; PERRONE; and DOES 1 through 10, Inclusive)

174.    Plaintiffs repeat and reallege paragraphs 1 through 173, inclusive, as though fully set forth at this point and incorporated by reference herein.

175.    California Government Code §§ 3300 et seq. constitute the Public Safety Officers' Procedural Bill of Rights Act ("Act").  Section 3304(b) states as follows:

> "No punitive action, nor denial of promotion on grounds
> other than merit, shall be undertaken by any public agency
> against any public safety officer who has successfully
> completed the probationary period that may be required by
> his or her employing agency without providing the public
> safety officer with an opportunity for administrative
> appeal."

176.    Pursuant to Government Code § 3309.5, it is unlawful for any public safety department to deny or refuse any public safety officer the rights and protections guaranteed to them by the Act.

177.    In the present matter, Plaintiffs believe that beginning in or about January, 2003, Officer Hackett, who tested for the position of sergeant and ranked second, and other CPOA members, were and continue to be denied promotions on grounds other than merit.  Specifically, Plaintiffs believe they were denied promotion due to their labor union affiliation and activity. Plaintiffs allege that at all times herein relevant, they were qualified on the grounds of merit to be promoted.

### PUNITIVE DAMAGES

178.    Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs 1 through 177 of this COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF as if same were fully set forth herein at length.

179.     The acts complained of herein before were willfully, unlawfully, maliciously and in wanton disregard of the rights and feelings of Plaintiffs, and by reason thereof Plaintiffs demand exemplary or punitive damages against all Defendants, save and except Defendant City, in the amount of $5,000,000, to the extent same shall be immune at law therefrom.

## JURY DEMAND

180.     Plaintiff demands a jury for the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all of them pray judgment against Defendants, and all of them as follows:

1.     Judgment vacating the decision to place OFFICER CHRISTIAN on administrative leave and reprimand of OFFICER CHRISTIAN, and restoring him to his previously held status as a Detective Sergeant in good standing with the CPD;

2.     Judgment expunging OFFICER CHRISTIAN'S being placed on administrative leave and reprimand and all references thereto in the records of the CPD;

3.     Issuance of a preliminary and permanent injunction for all retaliation, including but not limited to employment actions, harassment, abuse, creating a hostile work environment, and defaming Plaintiffs;

4.     Ordering OFFICER GONZALEZ'S immediate reinstatement to full and non-probationary status as a Police Officer in good standing for the CPD with full back pay and all other benefits and emoluments of his employment retroactive to September 30, 2003;

5.     Ordering Defendants, their agents and successors, to cease and desist from interfering with Plaintiffs' liberty and property rights under the First Amendment, Fourteenth Amendment, and Due Process Clause of the Constitution of the United States, from making defamatory statements, retaliating against Plaintiffs, and creating a hostile work environment;

6.   Ordering Defendants, their agents and successors, to cease and desist from interfering with Plaintiff's First Amendment rights and activities;

7.   Ordering Defendants, their agents and successors, to cease and desist from interfering with Plaintiff's rights under the Public Safety Officers Procedural Bill of Rights Act, California Government Code §§ 3300 et seq.;

8.   Reimbursement for the actual costs, including interest, for the price of the AR-15 rifles and all purchased accessories;

9.   For injunctive relief pursuant to Cal. Gov. Code §3309.5;

10.   For injunctive relief that Plaintiff's, and all of them, be enjoined from further retaliation against the CPOA and its members, including but not limited to employment discipline;

11.   For loss of past and future income, including benefits, in an amount according to proof at trial;

12   For expenses incurred in seeking comparable employment;

13.   For general and compensatory damages, including lost wages and benefits, and emotional distress damages in an amount according to proof at trial;

14.   For punitive damages against Defendants, and all of them, in an amount according to proof at trial;

15.   For all costs of suit incurred herein, including,  attorneys' fees, investigation fees, and expert witness fees incurred herein;

16.   For unpaid wages and an accounting thereon;

17.   For prejudgment interest on all amounts claimed;

///
///
///
///
///

1      18.    For attorneys' fees, costs, and disbursements as provided at Cal. Civil.

2 Code § 800; and

3      19.    For such other and further relief as the Court deems just and proper.

4

5 DATED: October _9_, 2003         CASTLE, PETERSEN & KRAUSE LLP
                          Attorneys At Law

6

7

8                     By: _____
                          Micah S. Lachman, Esq.

9                           **Attorneys for Plaintiffs**
                          **Jesus E. Gonzalez and Calexico Police**
                          **Officers' Association**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Recycled    Stock # R-EX-10-B



# Calexico Police Department

420 EAST FIFTH STREET • CALEXICO, CALIFORNIA 92231
TEL. (760) 768-2140 • FAX (760) 357-1241

Mario V. Sanchez
*Chief of Police*

James L. Neujahr
*Lieutenant*

Jill M. Tangedal
*Lieutenant*

March 15, 2002

To Whom It May Concern:

Under penalty of perjury, I hereby certify that the below-named individual is a duly sworn law enforcement officer with the Calexico Police Department, that this officer is not subject to a court order restraining from harassing, stalking, or threatening an intimate partner or child of such partner.

I also certify, under penalty of perjury, that a records check conducted on the law enforcement officer below who is registering the below listed firearm and it has revealed no convictions for misdemeanor or felony crimes of domestic violence.

Furthermore, I certify that the firearm to be registered will be used in performing official duties and that any high capacity ammunition feeding device(s) will not be for personal use or for the purposes of transfer or resale and is in accordance with State of California Senate Bill 626 which states as follows;

## SB 626 (Stats. 2001, ch. 937) (Perata)

Effective January 1, 2002, allows specified law enforcement officers with the authorization of their employing agencies to retain and personally possess assault weapons that they have possessed or owned prior to January 1, 2002, provided they register those firearms as assault weapons with the DOJ on or before April 1, 2002.

## OFFICER INFORMATION:

| | |
|---|---|
| Full Name: | Michael Christian |
| Home Address: | 1885 W. Main Street #147 |
| City, State, Zip Code: | El Centro, California 92243 |
| Home phone number: | 760-337-1714 |
| Date of Birth: | 7-24-72 |
| Agency Phone Number: | 760-768-2140 |
| Badge/ID number: | 51-16 |

## FIREARM INFORMATION:

| | | | |
|---|---|---|---|
| Make: | DPMS Panther Arms | Model: | A15 |
| Caliber: | .223 | Finish: | Black |
| Barrel Length: | 11.5 inches | Serial Number: | F005955 |

_____
Mario V. Sanchez
Chief of Police

_____
Officer Signature

Exhibit 1
1 of 1

Recycled   Stock # R-EX-10-B

DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

## APPLICATION FOR TAX EXEMPT TRANSFER AND REGISTRATION OF A FIREARM

TO BE SUBMITTED IN DUPLICATE
TO:   National Firearms Act Branch
Bureau of Alcohol, Tobacco and Firearms
Washington, DC 20226

**2a.** TRANSFERREE'S NAME AND ADDRESS (If transferee is a Special (Occupational) Taxpayer who is acquiring firearm for personal use, rather than as part of his business inventory, show personal name below and check here: ☐)

Calexico Police Department
420 E 5th St
Calexico CA 92231

**2b.** TRADE NAME (See instruction 2e)

**2c.** COUNTY
Imperial

**1.** TYPE OF TRANSFER: TAX EXEMPT

I believe that I am entitled to exemption from the payment of the transfer tax imposed by Section 5811 (26 U.S.C. Chapter 53) on the firearm described herein for the following reason See Instruction 6):

☐ FIREARM IS UNSERVICEABLE AND IS BEING TRANSFERRED AS A CURIO OR ORNAMENT (6a)

☒ FIREARM IS BEING TRANSFERRED TO OR FROM A GOVERNMENT ENTITY (6b & 6c)

☐ FIREARM IS BEING TRANSFERRED TO A LAWFUL HEIR (6d)

☐ OTHER (Specify)

**3a.** TRANSFEROR'S NAME AND MAILING ADDRESS (If firearm is registered under your trade name, enter your trade name. EXECUTORS: See instruction 2f.)

Defense Procurement Manufacturing Services, Inc.
13983 Industry Avenue
Becker MN 55308

**3c.** NUMBER, STREET, CITY, STATE AND ZIP CODE OF RESIDENCE (OR FIREARMS BUSINESS PREMISES) IF DIFFERENT FROM ITEM 3a.

**3b.** IF APPLICABLE: DECEDENT'S NAME, ADDRESS, AND DATE OF DEATH

The above-named and undersigned tranferor hereby makes application as required by Section 5812 of the National Firearms Act to transfer and register the firearm described below to the transferee.

**4.** DESCRIPTION OF FIREARM (Complete items a through i)

**d.** MODEL A15

| **a.** NAME AND ADDRESS OF MANUFACTURER AND/OR IMPORTER OF FIREARM | **b.** TYPE OF FIREARM (Short-barreled rifle, machine gun, destructive device, any other weapon, etc.) | **c.** CALIBER, GAUGE OR SIZE (Specify) | |
|---|---|---|---|
| DPMS, Inc<br>13983 Industry Ave<br>Becker MN 55308 | | | **LENGTH** (Inches)  **e.** OF BARREL: 11½"  **f.** OVERALL: 34" |
| | Shortbarreled Rifle | .223 | **g.** SERIAL NUMBER<br>F005955 |

**h.** ADDITIONAL DESCRIPTION OR DATA APPEARING ON FIREARM (Attach additional sheet if necessary)

**i.** IS THE FIREARM UNSERVICEABLE AS DEFINED IN INSTRUCTION 6a? ☐ YES  ☐ NO   (If "No," describe any other method by which firearm has been rendered unserviceable. Use additional sheets.)

**5.** TRANSFEREE'S FEDERAL FIREARMS LICENSE (If any)

(Give complete 15-digit number)

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| | | | |

**6.** TRANSFEREE'S SPECIAL (OCCUPATIONAL) TAX STATUS

| **a.** ATF IDENTIFICATION NO. | **b.** CLASS |
|---|---|
| | |

**7.** TRANSFEROR'S FEDERAL FIREARMS LICENSE (If any)

(Give complete 15-digit number)

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 3-41-071 | 07 | 1M | 35232 |

**8.** TRANSFEROR'S SPECIAL (OCCUPATIONAL) TAX STATUS

| **a.** ATF IDENTIFICATION NO. | **b.** CLASS |
|---|---|
| 41-1556508 | 2 |

UNDER PENALTIES OF PERJURY, I DECLARE that I have examined this application, and to the best of my knowledge and belief it is true, correct and complete, and that the transfer of the described firearm to the transferee and receipt and possession of it by the transferee are not prohibited by the provisions of Chapter 44, Title 18, United States Code; Chapter 53, Title 26, United States Code; or Title VII of the Omnibus Crime Control and Safe Streets Act, as amended; or any provisions of State or local law.

**9.** SIGNATURE OF TRANSFEROR (Or authorized official)

**10.** NAME AND TITLE OF AUTHORIZED OFFICIAL (Print or type)
Randy E. Luth, President

**11.** DATE
9/5/01

THE SPACE BELOW IS FOR THE USE OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

BY AUTHORITY OF THE DIRECTOR, THIS APPLICATION HAS BEEN EXAMINED, AND THE TRANSFER AND REGISTRATION OF THE FIREARM DESCRIBED HEREIN AND THE INTERSTATE MOVEMENT OF THAT FIREARM, WHEN APPLICABLE, TO THE TRANSFEREE ARE:

☒ APPROVED (With the following conditions, if any)

☐ DISAPPROVED (For the following reasons)

| EXAMINER | DATE | AUTHORIZED ATF OFFICIAL<br>Maurice Walke | SEP 24 2001 |
|---|---|---|---|

ATF FORM 5 (5320.5) (4-89)

PREVIOUS EDITIONS ARE OBSOLETE

Exhibit 2
1 of 1

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EX-10-B



# Calexico Police Department

420 EAST FIFTH STREET • CALEXICO, CALIFORNIA 92231
TEL. (760) 768-2140 • FAX (760) 357-1241

Mario V. Sanchez
Chief of Police

James L. Neujahr
Lieutenant

Jill M. Tangedal
Lieutenant

September 15, 2003

Officer Rudy Alarcon
431 10th Street
Calexico, CA 92231

Re:    Order to Return Assault Weapon – DPMS Panther A15

In 2002 you purchased a short-barreled DPMS Panther assault weapon.   The City of Calexico has made a policy decision that officers should *not* utilize these weapons in the course of law enforcement, therefore, letter to the California Department of Justice is hereby rescinded.  I have also notified the California Department of Justice (DOJ) that I have rescinded this authorization.

Because you are not authorized to use this weapon for law enforcement purposes, the following two (2) laws make it *illegal* for you to retain this weapon for your personal use:

1.    Penal Code Section 12095 precludes the Department of Justice from issuing permits for the possession of short-barreled shotguns or rifles, except:  a) to licensed gun dealers; b) manufacturers or for use as props in various types of entertainment events.

2.    Penal Code Section 12280 prohibits persons from possessing assault weapons.

Moreover, the DOJ notified you in May 2002, (see attached) that your request to register the weapon in your own name was denied.

Interim City Manager Luis Estrada advised CPOA President Eric Hackett in a memorandum dated August 29, 2003, to advised any members that had purchased the assault weapon to return the weapon and the receipt of purchase so that the City could reimburse you.  The deadline that the City Manager gave for returning your weapon was September 5, 2003.  As of today's day, no one has responded to the City Manager's request.

As a result, I am ordering you to return your DPMS Panther assault weapon no later than 5:00 p.m. on Wednesday, September 24, 2003, to Lt. Neujahr or Lt. Tangedal.  Failure to comply with this order will result in disciplinary action, up to and including termination.

If you have sold this assault weapon, please provide, in writing, the name, address, and telephone of the person to whom the assault weapon was sold.  Provide this information to Lt. Neujahr or Lt. Tangedal, no later than 5:00 p.m. on Wednesday, September 24, 2003.

Mario V. Sanchez
Chief of Police

41                    Exhibit 3
                      1 of 1

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

OFFICER JESUS E. GONZALEZ, and CALEXICO
POLICE OFFICERS' ASSOCIATION ,

## DEFENDANTS

THE CITY OF CALEXICO, (see attached)

FILED

03 OCT -9 PM 2: 57

'03 CV 2005 JFS
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIF.

BY_____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Gregory G. Petersen (SBN 77744)
CASTLE, PETERSEN & KRAUSE LLP
12791 Western Avenue, Suite J
Garden Grove, California 92841
(714)372-7600

ATTORNEYS (IF KNOWN)
Michael L. Rood, City Attorney
608 Heber Avenue
Calexico, California 92231

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. 1983 violation of civil rights, depriving Plaintiffs of their right to free speech and freedom of Association as provided by U.S. Constitution and State Constitution.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury — Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | PROPERTY RIGHTS | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | PERSONAL PROPERTY | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | SOCIAL SECURITY | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | LABOR | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [X] 442 Employment | HABEAS CORPUS: | [ ] 740 Railway Labor Act | FEDERAL TAX SUITS | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ over 5 mil

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  Docket Number _____

DATE
October 9, 2003

SIGNATURE OF ATTORNEY OF RECORD
Micah S. Lachtman, Esq.

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

$150.00   10/9/03  #97843

Attachment to Civil Cover Sheet


# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

OFFICER JESUS E. GONZALEZ,
and CALEXICO POLICE
OFFICERS' ASSOCIATION,

      Plaintiff,

vs.

THE CITY OF CALEXICO; CALEXICO POLICE DEPARTMENT;
MARIO V. SANCHEZ, CHIEF OF POLICE,
individually and in his official capacity;
JAMES L. NEUJAHR, LIEUTENANT, individually and in his official
capacity;
LUIS ESTRADA, CITY MANAGER,individually and in his official
capacity;
JOHN RENISON, CITY COUNCIL MEMBER, individually
and in his official capacity,
ALEX PERRONE, CITY COUNCIL MEMBER, individually and in his
official capacity;
AND DOES 1 THROUGH 10, INCLUSIVE,.

      Defendants.